```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
MICHAEL HALPERT,                    :
                                    :
              Plaintiff,            :    04 Civ. 1850(BSJ)
                                    :    **Memorandum & Order**
     v.                             :
                                    :
MANHATTAN APARTMENTS, INC.,         :
                                    :
              Defendant.            :
------------------------------------X
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Michael Halpert ("Plaintiff") brought suit against Manhattan Apartments, Inc. ("Defendant") for denying his application for employment on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"). The Court originally granted summary judgment in favor of Defendant. Plaintiff appealed and the Second Circuit vacated the judgment, remanding on the question of whether the real estate salesperson interviewing Plaintiff had Defendant's authorization to hire Plaintiff for a position with Defendant or whether Defendant's conduct led Plaintiff to believe that the salesperson had such authority. Defendant again moves for summary judgment. For the following reasons, Defendant's Motion for Summary Judgment is DENIED.

1

**Background**

The following facts are undisputed.

On or about October 2001, Plaintiff interviewed at Defendant's offices with Robert Brooks to be a "shower." Pl.'s Rule 56.1 Stmt. Facts ¶ 13. Brooks was a real estate salesperson associated with Defendant, a real estate brokerage headed by Jerry Weinstein, its president. *Id.* ¶ 1. Brooks regularly hired individuals to work for him as showers, a job which involved unlocking and locking apartments for Brooks's clients. *Id.* ¶¶ 8-9. These showers were employees of Brooks, not of Defendant; they were paid by Brooks, not by Defendant; and they only had a legal relationship with Brooks, not with Defendant. *Id.* ¶¶ 8-12.

Laura Nielsen, a job specialist with Vocational and Educational Services for Individuals with Disabilities ("VESID"), had initially seen a newspaper advertisement for the position in the *Village Voice*. Nielsen Decl. ¶¶ 2-3. The advertisement did not identify the employer hiring for the shower position but did list Defendant's office phone number as the contact for inquiries. *Id.* ¶ 4. When Nielsen called this contact number, Defendant's receptionist answered with "Manhattan Apartments, Inc." *Id.* Nielsen then asked about the advertised position and was transferred to another person, who explained that the advertisement was for an entry level position

2

with Defendant. *Id.* ¶ 6. This led Nielsen to believe that an interviewee for the position would be employed by Defendant if hired. *Id.* ¶ 7.

Nielsen provided Plaintiff with the information she acquired about the position and advised him to apply for it. Nielsen Decl. ¶ 8. Based on Nielsen's information, Plaintiff was under the impression that the position was part of a training program run by Defendant that included payment on commission and the potential for promotion within the brokerage. Halpert Dep. 39:11-40:23, 71:22-72:4. Although Nielsen asserted that she did not hear of Brooks until after Plaintiff's interview (Nielsen Decl. ¶¶ 6, 9), Plaintiff claims that Nielsen told him beforehand that Brooks would be his interviewer (Halpert Dep. 43:19-23). Other than the information relayed verbally by Nielsen, Plaintiff knew no other details about the position before the interview and did not see anything in writing about the position. Halpert Dep. 71:7-72:4, 76:8-15. Further, Plaintiff never submitted any applications or paperwork for his interview. Halpert Dep. 75:11-13.

When Plaintiff arrived at Defendant's offices for the interview, he was greeted by Defendant's receptionist, who said she was expecting him and directed him to Brooks's desk. Halpert Decl. ¶¶ 6-7. At the beginning of the interview, Brooks indicated that Plaintiff was too old for the position. *Id.* ¶ 9.

Several days after the interview, while meeting with Plaintiff, Nielsen called Defendant on her speakerphone to ask about the interview. *Id.* ¶ 12; Halpert Dep. 74:9-75:8. Defendant's receptionist answered and informed Nielsen that Plaintiff would not be hired because he was too old, explaining that "*[w]e* were looking for someone younger." Nielsen Decl. ¶ 10; Halpert Decl. ¶ 12. Nielsen was then transferred to Brooks, who confirmed that Plaintiff was disqualified because of his age. Nielsen Decl. ¶ 12; Halpert Decl. ¶¶ 13-14.

### *Discussion*

Summary judgment may only be granted when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears this burden and all facts must be construed in the light most favorable to the non-moving party. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). The non-moving party can defeat a motion for summary judgment by identifying a genuine issue of material fact, but may not "rely merely on allegations or denials in its own pleading" to do so— only specific facts will suffice. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 & n.11 (1986).

4

## I. Authority to Hire Plaintiff

The central issue in this lawsuit is whether Brooks had actual or apparent authority to hire Plaintiff on Defendant's behalf. *See Halpert v. Manhattan Apartments, Inc.*, 580 F.3d 86, 88 (2d Cir. 2009). If Brooks did not have such authority to hire Plaintiff, then Defendant cannot be held liable under the ADEA since it could not have authorized the alleged adverse employment action.[1]

Apparent authority exists when a principal's conduct, "reasonably interpreted," leads a third party to believe that the principal has consented to the agent performing certain functions on behalf of the principal. *Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996). Once apparent authority is created, it can only be eliminated if the principal gives notice to the third party. N.Y. Jur. 2d *Agency* § 104. In virtually all respects, the parties dispute genuine issues of material fact regarding whether Defendant's conduct cloaked Brooks with apparent authority to hire Plaintiff

---

[1] To present a prima facie case of age discrimination under the ADEA, a plaintiff must show the following: 1) he was within the protected age group, 2) he was qualified for the position, 3) he was subject to an adverse employment action, and 4) the adverse action occurred under "circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003) (quoting *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001)).

5

as Defendant's employee. Defendant has offered declarations from Brooks and Weinstein which aver in conclusory terms that Plaintiff was never told information that would lead him to believe that he was interviewing for a position with Defendant and that Defendant never indicated that Brooks had hiring authority. Weinstein Decl. ¶ 3; Brooks Decl. ¶ 3.

To dispute this assertion, Plaintiff has provided Nielsen's declaration and his own, which chronicle numerous verbal and visual cues that Plaintiff, as a third party, could reasonably have interpreted as a conferral of hiring authority. These cues include Brooks's regular use of Defendant's offices (Halpert Decl. ¶ 8; Halpert Dep. 44:19-45:4), Defendant's employees' practice of answering Brooks's phone with "Manhattan Apartments, Inc." (Nielsen Decl. ¶¶ 4-7), and the explanation given by Defendant's receptionist that "*[w]e were looking for someone younger*" (Nielsen Decl. ¶ 10; Halpert Decl. ¶ 12) (emphasis added). In conjunction with these cues, both Nielsen's initial conversation with Defendant's receptionist and the receptionist's conduct upon Plaintiff's arrival for his interview reinforced the appearance that Plaintiff was interviewing for a position with Defendant and that Brooks had hiring authority. Additionally, Brooks provided Plaintiff with a copy of his business card, which identifies Brooks as a "Licensed Assc. Broker" of "Manhattan Apartments Inc." but does

6

not state the nature of his affiliation with Defendant nor his status as an independent contractor. Halpert Decl. Ex. A. This evidence creates a genuine issue of material fact that must be resolved by a jury.

While apparent authority is genuinely at issue, actual authority is not. Actual authority exists when a principal expressly or impliedly grants an agent the power to perform a task. *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010). Actual authority is express when conveyed orally or in writing and is implied when the grant of authority is shown circumstantially. N.Y. Jur. 2d *Agency* § 98. Regardless of whether actual authority is express or implied, the principal must intend for the agent to exercise this power and must convey this intention to the agent. *Id.; Highland Capital Mgmt. LP*, 607 F.3d at 327 (stating that actual authority depends on "'direct manifestations from the principal to the agent'" (quoting *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir. 1997))). Brooks and Weinstein have denied that Defendant ever gave Brooks actual authority to hire Plaintiff and Plaintiff has not presented evidence that would allow a reasonable juror to conclude that Defendant, either expressly or impliedly, intended for Brooks to hire showers on Defendant's behalf.

Plaintiff admits that Brooks never had express authority to hire on Defendant's behalf and, consequently, only advances a theory of implied authority. Pl.'s Rule 56.1 Stmt. Facts ¶ 5. Plaintiff argues that Defendant granted Brooks actual authority to hire showers on Defendant's behalf because Weinstein extensively controlled Brooks's conduct, in compliance with his statutory obligations as a broker. Weinstein Dep. 43:9-44:11; see N.Y. Comp. Codes R. & Regs. tit. 19, § 175.21 (2011). Defendant's control over Brooks, however, says nothing about whether Defendant impliedly granted Brooks the power to hire Halpert since control does not imply a specific delegation of responsibility.

## II. Plaintiff's Mitigation of Damages

Defendant also argues that Plaintiff is not entitled to recovery because he did not fulfill his duty to mitigate damages. In order to obtain a recovery in an employment discrimination case, a plaintiff must exercise "reasonable diligence" in seeking employment after the discriminatory event.[2] *Ford Motor Corp. v. EEOC*, 458 U.S. 219, 231 (1982); *NLRB v. Thalbo Corp.*, 171 F.3d 102, 112 (2d Cir. 1999). Defendant

---

[2] The defendant bears the burden of showing 1) that suitable work existed and 2) that the plaintiff did not make reasonable efforts to pursue that work. *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997).

claims that Plaintiff did not make any efforts to continue his job search since Plaintiff testified that he had not filed any applications or scheduled any other interviews after his interview with Brooks. Halpert Dep. 57:18-22.

Yet Plaintiff testified at length that he sought employment after his interview with Brooks by continuing to participate in VESID, posting his resume on job search websites, and sending his resume to employers. Halpert Dep. 57:24-61:22; Halpert Decl. ¶¶ 16-23. Further, Plaintiff also testified about his attempted return to self-employment as a jeweler. Halpert Decl. ¶ 17. The record evinces genuine issues of material fact concerning the nature of Plaintiff's efforts to seek employment, whether those efforts demonstrated reasonable diligence, and how long Plaintiff sustained those efforts. These issues must also be brought before a jury.

### III. Judicial Estoppel

Lastly, Defendant argues that Plaintiff is judicially estopped from recovery under the ADEA because he was receiving social security disability benefits. Judicial estoppel attaches when a factual assertion supporting a party's claim directly contradicts a factual assertion made in another legal proceeding, such as a sworn statement in an application to the Social Security Administration. *Rodal v. Anesthesia Grp. of*

9

*Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). The Second Circuit has cautioned that judicial estoppel should be limited to "situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997)) (internal quotation marks omitted). Such risk and impact is far from certain here.

In April 2004, Plaintiff applied for Social Security Disability Insurance ("SSDI") benefits and, sometime after April 2004, began receiving Supplemental Security Income ("SSI"). Plaintiff does not deny that he reported to the Social Security Administration that he was disabled as of the date of his application and Plaintiff's SSDI Application Summary also reports that his disability began on September 11, 2001.[3] Defendant argues that Plaintiff could only have been eligible for SSDI benefits if he certified to the Social Security Administration that he was unfit for employment as of September 11, 2011, thereby making Plaintiff's claim that he was qualified for employment as a shower in October 2001 contrary to the

---

[3] The only evidence on the record to support Defendant's position is Plaintiff's SSDI Application Summary and Plaintiff's Notice of Award. Gehring Decl. Exs. D, E.

10

statements he must have made in his SSDI application. Def.'s Mem. Supp. Mot. Summ. J. 11-12.

Defendant, however, has not submitted Plaintiff's original, signed SSDI application, so the Court has no evidence of the sworn statements made by Plaintiff to the Social Security Administration. Moreover, even assuming that the SSDI Application Summary accurately reflects the statements made by Plaintiff in his original SSDI application, the fact that Plaintiff's disability "began" on September 11, 2001 does not squarely contradict his contention that he was qualified to work as a shower at the time of his October 2001 interview with Brooks—there is no reason why Plaintiff could not consider himself both disabled and fit to work. Accordingly, Plaintiff is not estopped from bringing this ADEA claim.

### *Conclusion*

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED. The parties are directed to file a joint pretrial order by December 15, 2011. Trial will be set for January 18, 2012.

**SO ORDERED:**

_____
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York

          November 28, 2011